IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CV-495

NEFTALI RIVERA NIEVES, )
)
                Plaintiff, )
)
v. ) **ORDER**
)
CHRISTINE WORMUTH, )
Secretary of the Army )
)
                Defendant. )

On December 3, 2021, Neftali Rivera Nieves ("Rivera" or "plaintiff")[1] filed a complaint pro se against the Secretary of the Army, Christine Wormuth ("Wormuth" or "defendant"), alleging violations of procedural due process under the Fifth Amendment and violations of the Administrative Procedure Act ("APA") [D.E. 1]. On December 16, 2022, Wormuth moved for summary judgment [D.E. 24] and filed a memorandum in support [D.E. 25] and statement of material facts [D.E. 26]. On December 19, 2022, the court notified Rivera of the motion for summary judgment, the consequences of failing to respond, and the response deadline [D.E. 27]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). On February 10, 2023, Rivera submitted an untimely response in opposition [D.E. 29] and documents in support [D.E. 30]. On February 24, 2023, Wormuth replied [D.E. 32].

On February 24, 2023, Wormuth moved to strike Rivera's untimely response in opposition and documents in support [D.E. 31]. On March 27, 2023, Rivera responded in opposition and asked

---

[1] Plaintiff's last name is Nieves, but he has referred to himself as "Rivera" in these and other proceedings. See Nieves v. McHugh, 111 F. Supp. 3d 667, 670 n.1 (E.D.N.C. 2015). Thus, the court calls him Rivera.

the court to "hold" the case for 30 days [D.E. 34]. On April 20, 2023, Rivera filed an additional response in opposition [D.E. 37]. As explained below, the court grants defendant's motion for summary judgment, denies as moot defendant's motion to strike, and denies as moot plaintiff's motion to stay.

I.

On January 30, 1986, Rivera enlisted as a private in the army. See Defense Statement of Material Facts ("DSMF") [D.E. 26] ¶ 1.[2] On July 10, 1986, Rivera was convicted of wrongful use of cocaine at a nonjudicial punishment hearing pursuant to Article 15 of the Uniform Code of Military Justice ("Article 15 hearing"). See id. at ¶ 2. On August 19, 1988, Rivera's commanding officer filed a General Officer Memorandum of Reprimand in Rivera's Official Military Personnel File in response to Rivera being arrested for suspicion of driving while impaired and refusing to complete a chemical test for blood alcohol content. See id. at ¶ 3. On June 30, 1997, Rivera again tested positive for cocaine and a court-martial convicted Rivera of wrongful cocaine use. See id. at ¶¶ 4–5. The court sentenced Rivera to be demoted to private and to be discharged from the Army with a bad conduct discharge. See id. at ¶ 5. Rivera appealed. See id. at ¶ 6.

During the pendency of his appeal, the Army put Rivera on indefinite excess leave, during which Rivera did not receive pay or accrue military benefits. See id. at ¶¶ 6–7. While on indefinite

---

[2] Rivera failed to submit an opposing statement of material facts. Therefore, under Local Civil Rule 56.1(a)(2), each numbered paragraph in Wormuth's "statement of material facts [is] deemed admitted for the purposes of [Rivera's] motion." Local Civil Rule 56.1(a)(2); see Williamson v. Bridgestone Ams., Inc., __ F. Supp. 3d __, __, 2022 WL 4084413, at *3 (E.D.N.C. Sept. 6, 2022); Felton v. Moneysworth Linen Serv., Inc., 295 F. Supp. 3d 595, 597 n.1 (E.D.N.C. 2018); Howard v. Coll. of the Albemarle, 262 F. Supp. 3d 322, 329 n.1 (E.D.N.C. 2017), aff'd, 697 F. App'x 257 (4th Cir. 2017) (per curiam) (unpublished); United States v. Compassionate Home Care Servs., Inc., No. 7:14-CV-113, 2017 WL 1030706, at *1 n.1 (E.D.N.C. May 15, 2017) (unpublished); see also Fed. R. Civ. P. 56(e)(2).

2

excess leave, civilian police arrested Rivera for driving while impaired, and Rivera received a suspended sentence. See id. at ¶ 8.

On April 18, 2001, the United States Court of Appeals for the Armed Forces overturned Rivera's conviction because of improper prosecutorial argument. See id. at ¶ 9; United States v. Rivera-Nieves, 54 M.J. 460, 462–63 (C.A.A.F. 2001). After this decision, Rivera returned to Fort Bragg, North Carolina, and the Army terminated his indefinite excess leave. See DSMF ¶ 10.

On March 20, 2002, Rivera reenlisted in the Army for an "indefinite" term of service. See id. at ¶ 12. On July 1, 2002, civilian police arrested Rivera for driving while impaired, and a North Carolina court sentenced him to twelve months' probation. See id. at ¶ 13. On March 17, 2004, Rivera was convicted at an Article 15 hearing for being absent without leave ("AWOL"). See id. at ¶ 14. Rivera was sentenced to suspended demotion from staff sergeant to sergeant, $300 pay forfeiture, 30 days extra duty, and an oral reprimand. See id. From July 31 to August 3, 2004, Rivera went AWOL. See id. at ¶ 15. Upon return, Rivera tested positive for cocaine. At another Article 15 hearing, Rivera was convicted for cocaine use and being AWOL. See id. at ¶¶ 16–17. After this conviction, the Army demoted Rivera to specialist. See id. at ¶ 19.

On February 28, 2005, Rivera requested a voluntary retirement based on length of service. See id. at ¶ 20. Rivera's commander did not approve this retirement request. See id. at ¶ 21. Instead, the commander initiated administrative separation for misconduct under Army Regulation 635-200, Chapter 14-12b based on a pattern of misconduct. See id.; see also [D.E. 20-3] 273. In support, the commander listed Rivera's multiple convictions for wrongful use of cocaine, being AWOL, and operating a motor vehicle while impaired. See DSMF ¶ 23. On July 13, 2005, Rivera asked that the commander's request be withdrawn. See id. at ¶ 24. The commander did not withdraw the separation request and the case was referred to an Administrative Separation Board

3

("ASB"). See id. at ¶ 25. Rivera waived his right to appear personally before the ASB. See id. at ¶ 26.

On September 29, 2005, the ASB recommended that the Army discharge Rivera for a pattern of misconduct and recommended characterizing the discharge as "Other Than Honorable" ("OTH"). See id. at ¶ 27. On February 15, 2006, after a "careful review," the Assistant Secretary of the Army approved Rivera's OTH discharge. See id. at ¶ 33. On February 27, 2006, the Army discharged Rivera at rank E-1. See id. at ¶ 34. Rivera appealed to the Army Discharge Review Board ("ADRB") to have his discharge status changed from OTH to "Honorable." See id. at ¶ 36.

In 2008, the ADRB amended Rivera's discharge to "Honorable" and amended Rivera's discharge rank to Specialist (E-4). See id. at ¶ 39. The ADBR affirmed Rivera's involuntary discharge as "proper and equitable," but amended Rivera's discharge rank and status because the Army relied on limited use evidence to discharge Rivera. See id. at ¶¶ 37, 40.

On March 24, 2008, Rivera appealed to the Army Board for Correction of Military Records ("ABCMR") seeking "1) the removal of his Article 15, dated August 30, 2004; 2) withdrawal of his separation under Chapter 14; 3) approval of his voluntary retirement for time in service; and 4) amendment of his DD Form 214 to indicate that he served in Operation Enduring Freedom." Id. at ¶ 41. On August 5, 2008, the ABCMR denied Rivera's request. See id. at ¶ 42. The ABCMR found that Rivera's "request for retirement was properly disapproved since he was being considered for separation due to a pattern of misconduct," and "[i]t was the applicant's continued acts of misconduct that resulted in his loss of career and retirement, not solely actions taken by the Army." Id. at ¶ 44.

In 2014, Rivera filed suit in this court against the Secretary of the Army. See Nieves v. McHugh, 111 F. Supp. 3d 667 (E.D.N.C. 2015). Rivera alleged that "1) the Army and the ABCMR

violated the Rehabilitation Act; 2) the Army failed to follow multiple regulations in processing his administrative discharge for misconduct, which violated his procedural due process rights; and 3) the ABCMR violated the APA by denying him relief." DSMF ¶ 46. The court granted the Secretary of the Army's motion to dismiss and motion for summary judgment on Rivera's Rehabilitation Act, procedural due process, and injunctive relief claims. Nieves, 111 F. Supp. 3d at 674–78, 683. The court granted Rivera summary judgment on his APA claim and remanded the case to the ABCMR to "determine whether, in light of the ADRB's decision to upgrade Rivera's discharge to 'honorable,' the Army properly followed Army Regulation 601–280, ¶ 3–16(e) when it denied Rivera's request to correct his military records and affirmed the Army's discharge of Rivera under Army Regulation 635–200, ¶ 14–12(b)." Id. at 683–84. The court also held that "[t]he board should also reconsider its denial of Rivera's request for an amendment of his DD Form 214 to show that he served in Operation Enduring Freedom." Id. at 684.

In 2015, the ABCMR issued its decision on remand. See DSMF ¶ 55. The ABCMR found that Rivera had completed 20 years and 21 days of active service and was eligible for retirement. See id. at ¶ 56. The ABCMR found substantial supporting evidence in the administrative record, including Rivera's amended DD Form 214 and Rivera's discharge on the basis of a pattern of misconduct. See id. at ¶ 58. Citing Army Regulation 635-200, paragraph 12-7, the ABCMR held that service members with 20 years of active service "are eligible, but not entitled, to retire upon request." See id. at ¶ 57. The ABCMR found that although the "ADRB had upgraded [Rivera's] discharge characterization, the reason for his separation remained proper, equitable, and unchanged." Id. at ¶ 59 (cleaned up). Thus, the ABCMR concluded that Rivera was "involuntarily separated under adverse conditions, despite the ADRB's subsequent decision to upgrade his discharge to an honorable discharge." Id.

5

The ABCMR also found that the provisions of Army Regulation 601-280, ¶ 3-16(e) (the "sanctuary provision") did not protect Rivera from being involuntarily discharged for misconduct. See id. at ¶ 60. The ABCMR reasoned that the sanctuary provision is "designed to prevent the injustice of the Army automatically separating a career Soldier merely for having exceeded his or her RCP [retention control point]."[3] The ABCMR noted that "its interpretation was consistent with the language and format of ¶ 3-16(e) (as it applies to separations for "[r]eductions in rank"), [and] was consistent with the discretion vested in commanders to administratively discipline and separate soldiers for misconduct, and was consistent with Army Directive 2014-03, Retention Control Points." Id. at ¶ 62 (alteration in original). In light of these findings, the ABCMR denied relief, concluding that Rivera's "honorable discharge did not change the fact that he was discharged under adverse conditions, and that [Rivera] was not protected by the sanctuary provision of 10 U.S.C. § 1176 or Army Regulation 601-280." Id. at ¶ 64. The ABCMR also found insufficient evidence that Rivera served in Operation Enduring Freedom. See id. at ¶ 65.

On December 3, 2021, Rivera filed suit in this court challenging the ABCMR's decision on remand. See [D.E. 1]. Rivera alleges violations of procedural due process under the Fifth Amendment and that the ABCMR's 2015 decision violated the APA. See id. Although this court also remanded the question of whether Rivera served in Operation Enduring Freedom, and the 2015 ABCMR report addressed this issue, Rivera does not challenge the ABCMR's findings on this issue. See [D.E. 1].

---

[3] A retention control point is "the maximum number of years of active service an enlisted Soldier can have before he or she must either be selected for promotion or leave the Army." Id. at ¶ 61.

6

II.

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 378, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Harris, 550 U.S. at 378.

A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. See Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position [is] insufficient . . . ." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that affect the outcome under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248. The court analyzes Ali's claims under Title VII and Section 1981 in the same way. See Bryant v. Aiken Reg'l

7

Med. Ctrs., Inc., 333 F.3d 536, 543–45 (4th Cir. 2003); Henry v. Vaughn Indus., LLC, 450 F. Supp. 3d 671, 678 n.2 (E.D.N.C. 2020).

A.

Wormuth argues that res judicata bars Rivera's procedural due process claim. See [D.E. 25] 5–8. Rivera does not respond to the res judicata argument. See [D.E. 29].

Under the doctrine of res judicata, also known as claim preclusion, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981); Pueschel v. United States, 369 F.3d 345, 354 (4th Cir. 2004); see Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979); Laurel Sand & Gravel, Inc. v. Wilson, 519 F.3d 156, 161–62 (4th Cir. 2008); Parks v. Petsmart, No. 5:13-CV-777, 2014 WL 11996387, at *2 (E.D.N.C. Feb. 12, 2014) (unpublished), aff'd, 577 F. App'x 210 (4th Cir. 2014) (per curiam) (unpublished). The party invoking claim preclusion "must establish three elements: (1) a final judgment on the merits in a prior suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of the parties or their privies in the two suits." Meekins v. United Transp. Union, 946 F.2d 1054, 1057 (4th Cir. 1991); see Andrews v. Daw, 201 F.3d 521, 524 (4th Cir. 2000).

This court's decision in Nieves v. McHugh, 111 F. Supp. 3d 667 (E.D.N.C. 2015), bars Rivera's procedural due process claim. As for the first element, the court granted summary judgment in favor of the defendant on Rivera's procedural due process claims following full briefing and consideration of the governing standard, holding that "Rivera's constitutional claim arises out of his military service and is thus barred." Nieves, 111 F. Supp. 3d at 683. As for the second element, Rivera's current claim is identical to the claim Rivera raised in the prior proceeding. Compare [D.E. 1] 7 (alleging that the Army's violation of Army Reg. 635-200, ¶ 2-6.a violated Rivera's procedural

8

due process rights) with Nieves, 111 F. Supp. 3d at 684 ("Rivera contends that defendant violated his Fifth Amendment due process rights by failing to follow numerous provisions in Army Regulation 635–200"). As for the third element, the parties in this action and the prior action are the same. Compare [D.E. 1] 1 (suing the Secretary of the Army) with Nieves, 111 F. Supp. 3d at 667 (suing the Secretary of the Army). Therefore, claim preclusion bars Rivera's procedural due process.

To the extent Rivera bases his claim on "unlawful extension on active duty," claim preclusion also bars this claim. The court rejected this argument in Nieves v. McHugh. See Nieves, 111 F. Supp. 3d at 681 n. 5 ("Rivera's alternative argument—that the Army impermissibly retained him past his ETS in order to involuntarily separate him—fails because Rivera was serving an indefinite enlistment and therefore did not have an ETS."). Thus, claim preclusion bars Rivera's unlawful extension claim Accordingly, the court grants Wormuth's motion for summary judgment on the procedural due process and extended service claims.

## B.

Wormuth moves for summary judgment on Rivera's APA claims regarding the ABCMR's 2015 findings on remand. Wormuth argues that the ABCMR "reasonably interpreted Army Regulation 601-280, and issued a rational, well-supported decision." [D.E. 25] 9. Wormuth also argues that the "ABCMR's determination that Plaintiff is not protected from discharge by Army Regulation 601-280 ¶ 3-16(e) is not arbitrary, capricious, or otherwise not in accordance with law, and is supported by substantial evidence." Id. Rivera responds that Wormuth has "failed to prove and has misinterpreted all regulations pertaining this case . . . [a]nd the Army Board of Correction has also been Misleading [sic] pertaining this case." [D.E. 29] 2.

Under the APA, courts must "hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5

9

U.S.C. § 706(2)(A). In reviewing agency action, the court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Fort Sumter Tours, Inc. v. Babbitt, 66 F.3d 1324, 1335 (4th Cir. 1995) (cleaned up); see Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). The "inquiry into the facts is to be searching and careful," but "the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." Babbitt, 66 F.3d at 1335 (quotation omitted). Courts, however, "must not rubber-stamp administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." Nat'l Treasury Emps. Union v. Fed. Labor Rels. Auth., 647 F.3d 514, 517 (4th Cir. 2011) (cleaned up). "Although the scope of review is narrow, the agency must nevertheless explain the evidence which is available, and must offer a rational connection between the facts found and the choice made." Ohio River Valley Envtl. Coal., Inc. v. Kempthorne, 473 F.3d 94, 102–03 (4th Cir. 2006) (quotation omitted).

In the context of military boards, "decisions are subject to judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence." Chappell v. Wallace, 462 U.S. 296, 303 (1983); see Haselwander v. McHugh, 774 F.3d 990, 996 (D.C. Cir. 2014); Randall v. United States, 95 F.3d 339, 348 (4th Cir. 1996) ("The district court's review of the ABCMR's decision is quite limited . . . . [S]uch decisions can be set aside only if they are arbitrary, capricious, or not based on substantial evidence." (quotation omitted)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotation omitted). If the court finds that a military board acted arbitrarily or capriciously, it may remand for further proceedings. See, e.g., Haselwander, 774 F.3d at 1000; Hill v. Geren, 597 F. Supp. 2d 23, 33–34 (D.D.C. 2009).

10

In 2015, the court found the ABCMR's findings in its initial report violated the APA because the ABCMR failed to explain how its "decisions to uphold Rivera's discharge under Army Regulation 635–200 after his discharge was upgraded to 'honorable' complied with Army Regulation 601–280, ¶ 3–16(e), which expressly forbids separation under Army Regulation 635–200 for a servicemember in Rivera's circumstances." Nieves, 111 F. Supp. 3d at 682. The court remanded the matter to the ABCMR "to determine whether, in light of the ADRB's decision to upgrade Rivera's discharge to 'honorable,' the Army properly followed Army Regulation 601–280, ¶ 3–16(e) when it denied Rivera's request to correct his military records and affirmed the Army's discharge of Rivera under Army Regulation 635–200, ¶ 14–12(b)." Id. at 683. The 2015 ABCMR report following remand from this court constitute the findings at issue in this case. See [D.E. 1].

The 2015 ABCMR report fully discussed the ABCMR's reasoning on why the sanctuary provision of Army Regulation 601-280, ¶ 3-16(e) did not apply to Rivera. The ABCMR analyzed the text of Army Regulations 635–200 and 601–280. See [D.E. 20-3] 3–18. The ABCMR determined that Army Regulation 601-280, ¶ 3-16(e) is "designed to prevent the injustice of the Army automatically separating a career Soldier merely for having exceeded his or her RCP [retention control point]" on the eve of his or her eligibility for retirement. Id. at 15. The ABCMR noted that soldiers with 20 years of active service "are eligible, but not entitled, to retire upon request." Id. at 11. The ABCMR then addressed Riveras's case to determine if his conduct fell within Army Regulation 601-280, ¶ 3-16(e)'s sanctuary provision. Although the Army eventually upgraded Rivera's discharge from OTH to "honorable," the ABCMR still found Rivera was "involuntarily separated under adverse conditions." Id. The ABCMR concluded that under applicable law, the sanctuary provisions of Army Regulation 601-280, ¶ 3-16(e) did not protect Rivera from being involuntarily discharged under adverse conditions (i.e. for misconduct). See id. at 13–17.

11

The court finds that the ABCMR's conclusions are supported by substantial evidence and that its analysis of the sanctuary provision was not arbitrary and capricious. The record demonstrates that the ABCMR thoroughly analyzed Rivera's case and the sanctuary provision. The ABCMR considered the paragraph heading of Army Regulation 601-280, ¶ 3-16(e), the context of Army Regulation 601-280, ¶ 2-12(c)(2) and Army Regulation 601-280, ¶ 12-13(e)(3), and several decisions from the Court of Federal Claims. See id. at 3–18. The ABCMR also relied on evidence including, but not limited to, Rivera's disciplinary history and the ADRB proceedings. See id. Therefore, the ABCMR's findings are supported by substantial evidence and its conclusion is not arbitrary or capricious.

In opposition, Rivera argues for the first time that the Army violated "AR 635-200 Ch 2-6 (b) since [Rivera] was never given anything to sign requesting retirement to the Asst Secretary of the Army in accordance to the regulation." [D.E. 29] 2. This allegation does not appear in Rivera's complaint. See [D.E. 1]. Moreover, it is not clear how this allegation relates to the ABCMR's 2015 findings. Regardless, the administrative record contradicts Rivera's allegations. The record shows that Rivera submitted a request for voluntary retirement on February 28, 2005. See [D.E. 20-3] 154–57. The Army properly routed Rivera's request through the chain of command and each officer or administrator denied Rivera's request at every step. See id. at 156–60.

Rivera also argues that the ABCMR misinterpreted the regulations and facts involved in his case. See [D.E. 29]. The court, however, "is not empowered to substitute its judgment" for that of the ABCMR. Babbitt, 66 F.3d at 1335 (quotation omitted). Because the ABCMR's conclusions are not arbitrary and capricious and are supported by substantial evidence, the court declines to second-guess the ABCMR's interpretation of the facts and regulations applicable to Rivera's case. Thus, the court grant's defendant's motion for summary judgment on Rivera's APA claims.

12

In light of the court's ruling on Wormuth's motion for summary judgment, the court denies as moot Wormuth's motion to strike. See [D.E. 31]. As for Rivera's motion to stay proceedings for 30 days, it is unclear why Rivera wants a 30-day stay. To the extent Rivera requested such stay to respond to the motion to strike or motion for summary judgment, this request is moot. See [D.E. 34]. Moreover, it has been over 30 days since Rivera moved the court for a stay and Rivera has provided the court no additional reasons to stay the case indefinitely. Therefore, the court denies as moot Rivera's motion to stay.

III.

In sum, the court GRANTS defendant's motion for summary judgment [D.E. 24], DENIES AS MOOT defendant's motion to strike [D.E. 31], and DENIES AS MOOT plaintiff's motion to stay [D.E. 34]. The clerk shall close the case.

SO ORDERED. This __3__ day of May, 2023.

JAMES C. DEVER III
United States District Judge